1

2

3

4                          UNITED STATES DISTRICT COURT

5                                 DISTRICT OF NEVADA

6                                        * * *

7    GUS REDDING,                                    Case No. 2:19-CV-412 JCM (EJY)

8                              Plaintiff(s),                        ORDER

9              v.

10   SOC, LLC,

11                             Defendant(s).

12

13          Presently before the court is defendant SOC, LLC's ("SOC") motion for summary

14   judgment.  (ECF No. 64).  Plaintiff Gus Redding ("Redding") filed a response (ECF No. 70), to

15   which SOC replied (ECF No. 74).

16   **I.      Background**

17          This action arises out of an employment dispute in which Redding alleges that SOC

18   retaliated against him for participating in the sexual harassment investigation initiated by

19   Redding's coworker, Jennifer Glover.

20          On July 6, 1998, Redding began his employment as a security police officer ("SPO") at the

21   Nevada National Security Site ("NNSS").  In November 2017, Glover alleged that members of the

22   NNSS Special Reaction Team ("SRT") sexually assaulted her during a training exercise.  Later

23   that year, Redding gave an interview to NNSS's then managing contractor, Centerra, supporting

24   Glover's assault claim.  In March 2018, while the investigation was still pending, SOC took over

25   the management contract for NNSS and became Redding's employer.

26          Redding alleges that he experienced retaliation due to his participation in the sexual assault

27   investigation which continued when SOC took over his employment.  Specifically, Redding

28   alleges four incidents occurred between June 2018 and January 2019: 1) when SRT members

James C. Mahan
U.S. District Judge

blocked Glover and Redding from leaving NNSS's "icehouse," 2) when a lieutenant closely related to an alleged assaulter targeted Redding with a disproportionally strict equipment inspection called a "matrix check," 3) when SOC placed Redding on unjustifiable administrative leave due to that matrix check, and 4) when Redding's request for medical retirement was denied and he was limited to modified duty for months.

On June 28, 2018, Glover and Redding were parked outside of NNSS's icehouse, a deep freeze area near the cafeteria where employees go to get ice. There, SRT members parked behind Glover and Redding's vehicle, blocking the vehicle from leaving the parking lot for between thirty seconds and ten minutes. According to Redding, the SRT members laughed amongst themselves while walking slowly past him and looking in his direction.

Glover then submitted a harassment complaint to SOC regarding the icehouse incident, and on August 1, 2018, Redding submitted a statement supporting Glover's complaint.

Just two days later, Glover and Redding were working at a guard shack when lieutenant Cody Craig—brother of one of Glover's alleged assaulters—told them that they both had an equipment inspection called a matrix check. Craig issued Redding a counseling form because Redding did not have his vest or gear bag during the matrix check. Redding refused to sign the counseling form, maintaining that he did have his vest on his person and that his bag was in his locker, which he claims was normally accepted during a matrix check.

Later that same day, Redding approached Craig and exchanged words. Redding alleges that he merely told Craig to stop retaliating against Glover and him, but SOC argues that Redding made threats to Craig. Just hours later, SOC placed Redding on administrative leave pending an investigation into Redding's alleged threats against Craig. After six weeks, SOC's investigation found that Redding's conduct toward Craig was unacceptable and unprofessional but found no grounds to terminate him. So, Redding returned to work in early October 2018.

Then, in January 2019, Redding requested medical retirement based on the findings of Dr. Jeff Moon—Redding's personal physician and the former medical director at NNSS—and Major Todd Kuhnwald, a physician's assistant working for Mission Support and Test Services

James C. Mahan
U.S. District Judge

- 2 -

1  ("MSTS"), which operates the occupational medicine clinics for NNSS and provides the medical

2  and psychological certifications necessary for SPOs to maintain employment at NNSS.

3       Kuhnwald found that Redding's back had deteriorated from years of carrying heavy gear

4  during his time as an SPO and recommended he be placed on "modified duty" until his medical

5  retirement was approved by Dr. Alex Malone—the current NNSS medical director.  According to

6  Kuhnwald, the approval process for medical retirement usually took about 24 hours.

7       Dr. Malone did not agree with Kuhnwald's recommendation.  So, on February 6, 2019, Dr.

8  Malone told Redding he would sign off on the medical disqualification only if Redding underwent

9  an independent medical examination ("IME") and a human reliability program.

10       The denial of Redding's medical leave resulted in Redding not having any work for two

11  months because SOC failed to find "modified work" that Redding could complete while on the

12  "modified duty" Kuhnwald recommended.  During that time, Redding brought this action against

13  SOC asserting retaliation claims under Title VII of the Civil Rights Act of 1964 and Nevada

14  Revised Statute § 613.330.

15       Three weeks after filing this action, Redding underwent the IME.  The IME report found

16  that Redding was not permanently medically disqualified and thus could not obtain medical

17  retirement.  When Redding returned to NNSS for his "modified duty," he found that SOC refused

18  to provide him with a login or password to SOC's servers because SOC didn't know how long he

19  was going to be there and did not want him to have access.  (ECF No. 71-4 at 18).  Redding

20  continued showing up to NNSS with nothing to do until he resigned on July 8, 2019, to begin

21  working for Janus Global Operations ("Janus") as a security guard.

22       SOC now moves for summary judgment on Redding's retaliation claims.

23  **II.**   **Legal Standard**

24       Summary judgment is proper when the record shows that "there is no genuine dispute as

25  to any material fact and the movant is entitled to a judgment as a matter of law." [1]  Fed. R. Civ. P.

26

27      [1] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment,

28  a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

James C. Mahan
U.S. District Judge

56(a).  The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).  In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  In other words, the opposing party must show that a judge or jury has to resolve the parties' differing versions of the truth.  *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial.  *Anderson*, 477 U.S. at

James C. Mahan
U.S. District Judge

- 4 -

249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249–50.

**III.    Discussion**

In evaluating retaliation claims under Title VII, the court uses the *McDonnell Douglas* burden-shifting framework.  *See Hawn v. Executive Jet Mgmt., Inc.,* 615 F.3d 1151, 1158 (9th Cir. 2010); *see also Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1034–35 (9th Cir. 2006). Under this analysis, an employee must first establish a *prima facie* case of retaliation.  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007); *see Cornwell*, 439 F.3d at 1034–35.

If an employee establishes a *prima facie* case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Hawn*, 615 F.3d at 1156.  If the employer meets this burden, the employee must then raise a triable issue of material fact as to whether the employer's proffered reasons for its adverse employment action are mere pretext for unlawful retaliation.  *Noyes,* 488 F.3d at 1168.

Consistent with the following, the court DENIES SOC's motion for summary judgment.

A.  Redding establishes a *prima facie* case of retaliation

To establish a *prima facie* case of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action.  *Cornwell*, 439 F.3d at 1034–35.

1.  *Redding engaged in protected activities*

Under § 704 of the Civil Rights Act of 1964, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3.

Title VII provides two grounds for protected activity: the participation clause and the opposition clause.  *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir. 1978).  The

1  participation clause protects "employees who utilize the tools provided by Congress to protect

2  their rights" against practices "reasonably perceived as discrimination prohibited by Title VII."

3  *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988).  The opposition clause protects

4  "employees who oppose what they reasonably perceive as discrimination."  *Id*.

5       In November 2017, Centerra undertook an investigation into Glover's sexual harassment

6  and assault allegations.  Later that year, Redding gave an interview to Centerra and supported

7  Glover's allegations.  Additionally, when Glover initiated another investigation into the alleged

8  retaliation during the icehouse incident, Redding provided a statement to SOC supporting Glover's

9  allegations.  Finally, Redding initiated this Title VII action against SOC for those instances of

10  retaliation.

11       Thus, Redding engaged in protected activities covered by the statute.  *See* 42 U.S.C.

12  § 2000e-3.

13       *2.  SOC took adverse employment actions against Redding*

14       An adverse employment action is one that "materially affects the compensation, terms,

15  conditions, or privileges of employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

16  2008).  Here, Redding alleges two forms of adverse action: Co-worker harassment for the icehouse

17  incident and matrix check, and forced leave and modified duty for the administrative leave and

18  denial of medical retirement.[2]

19       **i.  The icehouse incident does not establish that co-worker harassment caused a hostile work environment**

20       Co-worker harassment "is actionable only if it is 'sufficiently severe or pervasive to alter

21  the conditions of the victim's employment and create an abusive working environment.'"  *See Ray*

22  *v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (quoting *Harris v. Forklift Systems, Inc.*, 510

23  U.S. 17, 21 (1993)).  The harassment must be "both objectively and subjectively offensive."  *Id.*

24  (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).  "To determine whether an

25  environment is sufficiently hostile, [courts] look to the totality of the circumstances, including the

26  'frequency of the discriminatory conduct; its severity; whether it is physically threatening or

27

28       [2] Redding does not specifically argue separate forms of retaliation, but his allegations amount to what the court can read only as these separate theories of retaliation.

**James C. Mahan**
**U.S. District Judge**

1    humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

2    employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

3        Redding alleges that he experienced co-worker harassment when SRT members blocked

4    in his vehicle near the icehouse and when lieutenant Craig conducted an unreasonably strict matrix

5    check resulting in an incorrect counseling form.

6        Even considering the icehouse incident and matrix check together, Redding fails to

7    establish that co-worker harassment created a hostile work environment based on the alleged

8    harassment he was subjected to. Redding alleges just two isolated events of co-worker harassment

9    over the more than eight months that passed since his participation in the sexual assault

10   investigation. While Redding may have been subjectively humiliated by the matrix check, the

11   harassment was not frequent, severe, or physically threatening, and Redding's work performance

12   was not unreasonably interfered with until he refused to sign the counseling form and traded words

13   with Craig later in the day.

14       Thus, under the totality of the circumstances, Redding fails to show co-worker harassment

15   caused a hostile work environment.

16       **ii.   There are genuine questions of material fact regarding whether the
             administrative leave constitutes retaliation by SOC**

17       Redding alleges that after Craig targeted him with the matrix check, Redding refused to

18   sign the counseling form and told Craig to stop retaliating against him and Glover. Later that same

19   day, SOC placed Redding on administrative leave pending what became a six-week investigation

20   into his altercation with Craig.

21       Redding argues that SOC placing him on indefinite leave without talking to him establishes

22   retaliation.[3] Assuming all facts in the light most favorable to Redding, the court agrees.

23       SOC punished Redding with indefinite administrative leave for expressing discontent with

24   Craig's harassing matrix check and retaliatory counseling form. Craig's harassment stemmed from

25   Redding's participation in the investigation into the SRT icehouse harassment, which itself

26

27   _____

28       [3] Redding compares his indefinite leave for alleged threats to the one week of
     administrative leave SOC imposed onto another employee who became so agitated and
     insubordinate that he had to be escorted off site.

**James C. Mahan
U.S. District Judge**

1    stemmed from Redding's participation in the sexual assault investigation.  Redding's leave was

2    longer than what SOC imposed on another employee for objectively worse conduct.

3           During SOC's six-week investigation into Redding's alleged threats against Craig, SOC

4    reduced Redding's hours, completely cut his overtime, and distributed his picture to SOC's

5    facilities with a "stop order" warning all personnel to deny him access and to alert SOC if he was

6    spotted.  Thus, Redding's administrative leave "materially affect[ed] the compensation, terms,

7    conditions, or privileges of [his] employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089

8    (9th Cir. 2008).

9           Accordingly, Redding establishes that SOC took adverse action against him by placing him

10    on administrative leave.

### iii.   There are genuine questions of material fact as to whether denial of medical retirement was an adverse action by SOC

12           Redding alleges that Dr. Malone, the physical protection medical director at NNSS,

13    retaliated against Redding on behalf of SOC when Dr. Malone denied Kuhnwald's

14    recommendation that Redding be placed on medical retirement.  (ECF No. 70 at 16–20).

15           Redding supports his position by alleging that Dr. Malone was aware of Redding's pending

16    lawsuit against SOC when he denied Redding's medical retirement and commented on it when he

17    spoke to Kuhnwald.  Redding argues that this "is a fact issue as to whether there was a retaliatory

18    motive" behind Dr. Malone's decision to deny Redding's medical retirement from his position

19    with SOC.

20           While Dr. Malone was not directly employed by SOC, SOC was involved in appointing

21    him as medical director.  He was also responsible for the medical treatment of SOC employees

22    and had final approval power over whether SOC employees could secure medical retirement.

23    Assuming all facts in the light most favorable to Redding, Dr. Malone denied Redding's medical

24    leave to prevent Redding from any secondary gain resulting from his lawsuit against SOC.  As

25    SOC disputes this, there is a genuine issue of material fact as to whether Dr. Malone made an

26    independent medical determination or perpetrated SOC's retaliation against Redding.

27    . . .

28

James C. Mahan
U.S. District Judge

- 8 -

3.   *Redding establishes a causal link between the adverse actions and his protected activities*

Causation is a "but for" test to determine whether the adverse action wouldn't have happened but for the plaintiff's protected activity.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).  "[C]ausation sufficient to establish the third element of the *prima facie* case may be inferred from . . . the proximity in time between the protected action and the allegedly retaliatory employment decision."  *Cornwell*, 439 F.3d at 1035 (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).

The matrix check and administrative leave occurred just two days after Redding submitted a statement supporting Glover's complaint about the icehouse incident.  Further, the denial of medical leave occurred while Redding contemplated initiating this action and was directly related to Dr. Malone's concerns regarding this action.  At the summary judgment stage, these proximities in time establish inferences of causation.  *See Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988).

Accordingly, Redding has asserted a *prima facie* case for retaliation for his administrative leave and denial of medical retirement.

B.   SOC provides legitimate, nondiscriminatory reasons for the adverse actions

If an employee establishes a *prima facie* case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Hawn*, 615 F.3d at 1156.

As to the administrative leave, SOC maintains that Redding threatened Craig after the matrix check and that the administrative leave pending an investigation into those threats was necessary due to the "very serious safety concern [of] threats made to a duty officer while carrying a loaded weapon."  (*Id.* at 9–10).

As to the denial of medical retirement, SOC argues that decisions regarding medical retirement are not up to SOC, but solely in the discretion of the physical protection medical director.  SOC argues that it did not employ Dr. Malone, it was not involved in his decision to require an IME, and it did not exert any influence over his decision about Redding's medical

James C. Mahan
U.S. District Judge

- 9 -

1   retirement.  Finally, SOC argues that it did not impose any permanent denial of medical retirement

2   because Redding quit before the results of the IME were determined.

3          Accordingly, SOC satisfies its burden to produce legitimate, nondiscriminatory reasons for

4   the adverse actions taken against Redding.

5          C.  Redding shows that SOC's legitimate reasons are merely pretext

6          Pretext may be shown either indirectly, by showing the employer's proffered explanation

7   is unworthy of credence because it is internally inconsistent or otherwise not believable, or

8   directly, by showing that unlawful retaliation was more likely what motivated the employer.  *Lyons*

9   *v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

10         Redding indirectly shows pretext by alleging that SOC placed him on administrative leave

11  pending an investigation after the matrix check without even speaking to him—an investigation

12  surrounding Redding's request that Craig stop retaliating against him and Glover.  SOC kept

13  Redding on leave for this verbal altercation for six weeks, which is internally inconsistent with

14  SOC placing another employee on one week of leave for worse conduct.

15         Redding also directly shows pretext by showing that his medical retirement was denied in

16  the face of Kuhnwald's and Dr. Moon's recommendations, that the approval process was delayed

17  for months, that Dr. Malone's concern regarding Redding's medical retirement was because

18  Redding initiated this action, and that Redding was cut off from access to SOC's servers which

19  prevented him from performing any actual work while he was waiting for the IME results.

20         Accordingly, Redding establishes that SOC's allegedly legitimate reasons for the adverse

21  actions are merely pretext.

22         In sum, Redding has established a *prima facie* case for retaliation and has raised a genuine

23  dispute of material fact regarding the legitimacy of SOC's reasons for the adverse

24  employment actions.[4]  Accordingly, the court will not grant summary judgment on Redding's

25  retaliation claims.[5]

26  _____

27         [4] Specifically, as to Redding's placement on administrative leave following the matrix
    check and Redding's denied medical retirement, not as to the icehouse incident.

28         [5] The court makes no determination as to Redding's requests for front and back pay.

James C. Mahan
U.S. District Judge

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SOC's motion for summary judgment (ECF No. 64) be, and the same hereby is, DENIED.

DATED November 1, 2021.

_____

UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**